**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALLSTATE INSURANCE COMPANY,
          *Plaintiff-Appellant,*

v.

THE WEST VIRGINIA STATE BAR; THE
WEST VIRGINIA STATE BAR
COMMITTEE ON UNLAWFUL PRACTICE,
          *Defendants-Appellees.*

No. 98-1537

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-97-1056-2)

Argued: January 26, 1999

Decided: November 30, 2000

Before WIDENER and MURNAGHAN,* Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Senior Judge Hamilton joined.

_____

   *Judge Murnaghan heard oral argument in this case but died prior to
the time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

## COUNSEL

**ARGUED:** Benjamin Lee Bailey, BOWLES, RICE, MCDAVID, GRAFF & LOVE, P.L.L.C., Charleston, West Virginia, for Appellant. Sanford Benjamin Bryant, KING, ALLEN, GUTHRIE & MCHUGH, Charleston, West Virginia, for Appellees. **ON BRIEF:** Brian A. Glasser, BOWLES, RICE, MCDAVID, GRAFF & LOVE, P.L.L.C., Charleston, West Virginia, for Appellant. Robert B. King, Pamela L. Kandzari, KING, ALLEN, GUTHRIE & MCHUGH, Charleston, West Virginia, for Appellees.

## OPINION

WIDENER, Circuit Judge:

Plaintiff, Allstate Insurance Co. (Allstate), appeals the district court's dismissal without prejudice of Allstate's action against defendants, the West Virginia State Bar (State bar) and the West Virginia State Bar Committee on Unlawful Practice (committee), based on the district court's decision that it lacked subject matter jurisdiction, and in the alternative, that it should abstain. We address only the question of jurisdiction, not abstention, and we affirm.

On October 3, 1995, a West Virginia attorney complained to the West Virginia Lawyer Disciplinary Board asserting that Allstate was engaging in the unauthorized practice of law. At the time of the complaint, Allstate was distributing a pamphlet that was entitled "Do I need an Attorney?" to people with claims for which Allstate might be liable. The pamphlet allegedly aided claimants in processing their claims by providing them with information regarding whether they should hire an attorney before learning about any settlement offers by Allstate and fee arrangements the claimant should make should they decide to retain an attorney. Allstate did not distribute the pamphlet to claimants known to be represented by counsel.

The Lawyer Disciplinary Board referred the complaint against Allstate to the committee. The committee is a permanent committee of the State bar that is charged with addressing and deciding all com-

plaints regarding conduct that may qualify as the unauthorized practice of law pursuant to the criteria established by the West Virginia Supreme Court of Appeals. W. Va. State Bar, Bylaws, art. VII, § 1. A three-member sub-committee comprised of two practicing attorneys and a West Virginia circuit court judge[1] was assigned to hear the complaint. After publishing notice in the *West Virginia Lawyer* and requesting comments and prehearing submissions regarding the matter, the sub-committee conducted a hearing on Allstate's pamphlet on July 17, 1997. At the hearing, about which no complaint is made, Allstate and the complainant presented various documents and argued their positions as to the propriety of Allstate's pamphlet. On September 22, 1997, the full committee issued its written opinion and decision that Allstate's dissemination of the pamphlet constituted the unauthorized practice of law.

On September 24, 1997, the committee provided its decision to Allstate and requested "confirmation and agreement that [Allstate] will desist from the unlawful practices." On October 7, 1997, Allstate requested that the committee reconsider its opinion, and the committee granted a stay of the opinion until October 28, 1997. On October 23, 1997, the committee denied Allstate's request for reconsideration. Allstate then ceased disseminating the pamphlet and filed this action seeking a permanent injunction against the committee and the State bar to prevent both entities from enforcing the opinion. Allstate asserted that the committee's opinion was an unconstitutional attempt to restrain Allstate's speech pursuant to the First Amendment and an unconstitutional attempt to restrain interstate commerce under the dormant commerce clause.[2]

---

[1]A West Virginia circuit court is a court of general jurisdiction.

[2]The complaint in this case seeks to enjoin the Committee from taking any action in support of its decision on the ground that the action of the committee is a violation of the First Amendment of the United States Constitution as an exercise of free speech, and also is in violation of the dormant commerce clause of the Constitution, art. I, § 8, under the following scenario: "The effect of the state action is only to enrich and protect West Virginia's lawyers at the expense of an out-of-state company. Rank protectionism of this sort violates the dormant commerce clause of the Constitution of these United States."

The district court dismissed Allstate's complaint on two alternative grounds. First, the court held that it lacked subject matter jurisdiction because a federal district court does not have the power to sit in direct review of a state-court decision, which in the instant case was the committee's ruling that Allstate was engaged in the unlawful practice of law. Second, the court ruled that abstention was mandated. We address only whether or not the district court properly dismissed the suit for lack of subject matter jurisdiction and do not consider the application of the abstention doctrine. Neither do we express an opinion on the merits of the case.[3] We conduct a de novo review of the district court's dismissal of Allstate's claims for lack of subject matter jurisdiction. See *Guess v. Bd. of Med. Exam'rs of State of N.C.*, 967 F.2d 998, 1002 (4th Cir. 1992).

We first decide whether the federal district court had subject matter jurisdiction to consider Allstate's constitutional claims that are linked with the committee's decision that Allstate was engaged in the unauthorized practice of law. The *Rooker-Feldman* doctrine mandates that lower federal courts "generally do not have jurisdiction to review such decisions; rather, jurisdiction to review state-court decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997). See also *District of Columbia Ct. App. v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-16 (1923). Under the *Rooker-Feldman* doctrine, lower federal courts are generally barred from not only considering issues actually presented to and decided by a state court, but also hearing constitutional claims that are "inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." See *Plyler*, 129 F.3d at 731 (quotations omitted).

In *Feldman*, 460 U.S. at 462, the Supreme Court considered whether the district court had subject matter jurisdiction to review a final decision by the District of Columbia Court of Appeals denying an applicant admission to the state bar. The Court held that the district court lacked jurisdiction to review the state court's allegedly uncon-

---

[3]See *Firestone Tire and Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981).

stitutional denial of an applicant's admission because the state-court action was judicial in nature and final state-court judgments may only be reviewed by the Supreme Court itself. See *Feldman*, 460 U.S. at 482; 28 U.S.C. § 1257. *Feldman* made clear that this rule applied also to constitutional claims that "are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar . . . ." *Feldman*, 460 U.S. at 482-84 n.16. See also *Czura v. Supreme Court*, 813 F.2d 644, 646 (4th Cir. 1987). The *Feldman* Court also indicated that "by failing to raise his claims in state court, a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court." *Feldman*, 460 U.S. at 484 n.16.

Allstate argues that, unlike in *Feldman*, the *Rooker-Feldman* doctrine is inapplicable because the committee was not a judicial body and the committee's proceedings did not possess any judicial characteristics. Allstate argues that it can factually distinguish its action from *Feldman*. Allstate, however, does not persuasively argue that the principles explicated in *Feldman* are not applicable here. Although the West Virginia Supreme Court of Appeals has not itself issued a final decision on the committee's decision with respect to Allstate's conduct, we nevertheless hold that the *Rooker-Feldman* doctrine prevents the district court from exercising subject matter jurisdiction.

In conducting this analysis, we are mindful of the weight given by the Supreme Court to federal-state comity concerns that arise out of federal review of state bar proceedings and to the "strength of the state interest in regulating the state bar." *Feldman*, 460 U.S. at 484 n.16 (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975) (stating that "[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts")).

The first question that we must answer is whether the Committee's proceedings qualify as judicial actions as opposed to administrative or ministerial processes. As the *Feldman* Court explained: "[a] judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist . . . . Legislation on the other hand looks to the future and

changes existing conditions by making a new rule to be applied there-after to all or some part of those subject to its power." *Feldman*, 460 U.S. at 477 (quoting *Prentis v. Atlantic Coast Line*, 211 U.S. 210, 226 (1908)). In evaluating the committee's proceedings to assess their judicial character, we examine the nature and effect of the proceeding and not the form of it. See *Feldman*, 460 U.S. at 478 (quoting *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 819 (1824)).

We are of opinion that the committee's actions and opinion are of a judicial rather than administrative character. The sub-committee which conducted the hearing was a sub-committee of the committee on Unlawful Practice of Law of the State Bar and was comprised of a circuit judge and two attorneys. It received and investigated the complaint filed against Allstate alleging that circulating its flier was the unlawful practice of law. The sub-committee held a hearing in which it heard argument and examined the facts and exhibits concerning the accused pamphlet. The full committee then analyzed the facts under the West Virginia State bar's definition of the practice of law and considered various state-court precedents defining conduct that was found to be the unauthorized practice of law. The committee then rendered its written opinion and decision in which it concluded that the dissemination of the pamphlet constituted the unlawful practice of law as defined by the West Virginia Supreme Court of Appeals. See W. Va. Code §§ 51-1-4a. The Committee then denied Allstate's petition for reconsideration and sought Allstate's agreement to act in accordance with its opinion. These proceedings were not ministerial or legislative. Rather, the committee investigated the claims against Allstate, applied the State Bar's regulations and state Supreme Court of Appeals precedents, and decided that Allstate was in violation. The committee did not look to the future and announce a new regulation applicable to all bar members. Instead, it ruled on a particular case pursuant to current law.

Next, we consider whether the State Bar and its committee are a part of the system of state courts. We examine the relationship between the State Bar, the committee, and the state-court system in West Virginia.

Here, the State Bar is an "agency of the [S]upreme [C]ourt of [A]ppeals of West Virginia." Its purpose is to "give effect to pertinent

rules of the [S]upreme [C]ourt of [A]ppeals." See W. Va. State Bar Constitution, arts. I, II. The State Bar is "a part of the judicial department of the State government . . . created for the purpose of enforcing such rules as may be prescribed, adopted and promulgated by the court." W. Va. Code § 51-1-4a(d). See also *Daily Gazette Co. v. Comm. on Legal Ethics*, 326 S.E.2d 705, 708 (W. Va. 1984) (deciding that "the West Virginia State Bar is an agency of the Supreme Court of Appeals, and not an independent agency"). The State Bar is also "authorized and empowered to perform the functions and purposes expressed in a constitution, bylaws and amendments thereto as shall be approved by the [S]upreme [C]ourt of [A]ppeals." W. Va. Code § 51-1-4a(d). Finally, The Supreme Court of Appeals is vested with exclusive authority to regulate and control the practice of law and has inherent power to supplement rules and procedures and to approve the State Bar's bylaws. See *Daily Gazette*, 326 S.E.2d at 708; *Comm. on Legal Ethics v. Douglas*, 370 S.E.2d 325, 334 (W. Va. 1988); W. Va. Code § 51-1-4a(e). Therefore, the State Bar is an agency within the state court system that operates pursuant to the rules that the Supreme Court of Appeals issues for it.

The principles creating and regulating the relationship between the state courts and the State bar apply to the committee, which is a part of, and whose authority is derived from, the State bar. See W. Va. State Bar Constitution, art. IV. The committee is a permanent committee of the State Bar and has "jurisdiction over all matters and questions which may be considered as constituting the unlawful practice of law under the definition of the practice of law adopted by the supreme court of appeals of West Virginia." W. Va. State Bar, Bylaws, art. VII, § 1. Further, when the committee initiates an action against a party it may do so in the name of the West Virginia State Bar, or in the name of the committee, or in the name of any member thereof. W. Va. State Bar, Bylaws, art. VII, § 2.

In deciding that Allstate's distribution of the pamphlet amounted to the unauthorized practice of law, the committee on behalf of the State Bar, exercised its authority created by the Supreme Court of Appeals pursuant to that court's rules, standards, and procedures with respect to the criteria for the unauthorized practice of law. The State bar and its committee were not established as entities independent of the state-court system nor do they possess a measure of independence

from the courts. Although the committee's members are appointed by a Board of Governors rather then by the Supreme Court of Appeals, we hold that the committee acts under the direction of the Supreme Court of Appeals and administers the rules that that court has provided for deciding when a party has engaged in the unlawful practice of law. The Supreme Court of Appeals exercises supervisory authority over the practice of law in West Virginia, and the State Bar and the committee act pursuant to that authority. Therefore, we hold that the State Bar and the committee are agencies within and a part of the system of state courts in West Virginia.

But the *Rooker-Feldman* doctrine denies us jurisdiction to hear Allstate's constitutional claims. Congress has entrusted only the Supreme Court of the United States with jurisdiction to hear appeals from the state courts. See 28 U.S.C. § 1257. But see *Plyler*, 129 F.3d at 732 (recognizing exception to the *Rooker-Feldman* doctrine for federal habeas corpus proceedings). Thus, the Supreme Court recognized in *Feldman* that the lower federal courts have no authority to review final judgments of a state court in judicial proceedings. *Feldman*, 460 U.S. at 482. See also *Suarez Corp. v. McGraw*, 125 F.3d 222, 228 (4th Cir. 1997). "The independence of state courts would surely be compromised if every adverse decision in state court merely rang the opening bell for federal litigation of the same issues." *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000). Because we have found that the Committee acted as an arm of the state courts engaged in a judicial decision-making process, we may not directly review its decision.

*Feldman* not only prevents us from reviewing issues actually decided by state courts, but also denies us jurisdiction over federal claims that are inextricably intertwined with state court decisions. *Feldman*, 460 U.S. at 483 n.16; *Breckenridge*, 211 F.3d at 198. A "federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (Marshall, J., concurring). See also *Plyler*, 129 F.3d at 731 (finding that the *Rooker-Feldman* doctrine bars "constitutional claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues

before it"). We cannot rule that Allstate's pamphlet is speech protected by the First Amendment without also concluding that the committee reached its decision in error. Allstate presented the committee with its argument that a decision that circulation of its pamphlet, "Do I Need an Attorney?", was the unauthorized practice of law would violate the Free Speech Clause of the First Amendment. The committee nonetheless found that the pamphlet constituted the unlawful practice of law. As a result, the committee necessarily concluded that its decision did not infringe upon Allstate's First Amendment rights. Whether or not the committee mentioned expressly Allstate's First Amendment claim, Allstate's constitutional challenge is inextricably intertwined with the committee's decision. *Guess*, 967 F.2d at 1003 (deciding that if state court erred in failing to address a constitutional challenge raised by plaintiff the proper recourse was appeal of that issue to the United States Supreme Court).

Neither do we consider Allstate's dormant commerce clause claim. By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court. *Feldman*, 460 U.S. at 484 n.16. The *Rooker-Feldman* doctrine may not be circumvented through artful pleading. As this court has noted, "Justice Brennan, in footnote 16 of *Feldman*, made clear that even if a claim is not presented to a state court, or by inference is not ruled upon, a plaintiff is not entitled to bring that claim in federal court if the claim was one that should have been brought in the state court." *Guess*, 967 F.2d at 1003. Because the dormant commerce clause issuance was not raised before the committee, we will not consider it here.

Allstate's last argument is that the decision of the committee was not a decision of a court and was accordingly not subject to the *Rooker-Feldman* doctrine. It bases this argument on the contention that the committee is an administrative agency, and, being an agency rather than a court, has no authority to decide the Constitutional question before it. It also argues that there is no judicial decision in the case, as is shown by the fact that there is no appeal from the decision of the committee within the State court system.

Neither of these arguments is well taken. The committee is not an administrative agency but is a part of the West Virginia court system,

as the West Virginia Supreme Court of Appeals has explicitly decided, and is explicitly provided by statute in West Virginia. See *Daily Gazette*, 326 S.E.2d at 708; W. Va. Code § 51-1-4a(d). So that argument is without merit.

The parallel argument, that the decision of the committee is not the decision of a court is likewise not well taken.

To repeat, the West Virginia statutory scheme for confining the practice of law to licensed attorneys consists of several steps. The State bar is a part of the judicial department of the West Virginia state government, created for the purpose of enforcing such rules as may be prescribed. W. Va. Code § 51-1-4a(d). The State Bar is "an agency of the [West Virginia] Supreme Court of Appeals, and not an independent agency." *Daily Gazette*, 326 S.E.2d at 708. The State bar is authorized to perform the functions and purposes expressed in a Constitution, bylaws and amendments approved by the West Virginia Supreme Court of Appeals. W. Va. Code § 51-1-4a(d). The Constitution and Bylaws of the West Virginia State Bar have been approved by the Supreme Court of Appeals of West Virginia. See Michie's W. Va. Code, State Court Rules, 816-18 (2000). Article IV of the Constitution of the State bar provides for "a committee on unlawful practice," the committee involved in this case. W. Va. State Bar Constitution, art. IV. Article VII of the Bylaws, in § 1, provides for the jurisdiction of the committee on unlawful practice, and, in § 2, for the powers of the committee. The committee "is empowered to dismiss any complaint, to enter into an agreement to desist from unlawful practices, or, when the facts warrant, to institute appropriate proceedings in the name of the West Virginia State bar . . . in any court having jurisdiction, for the purpose of securing appropriate relief." W. Va. State Bar, Bylaws, art. VII, § 2. In any investigation or hearing, the committee has subpoena powers equivalent to those of a circuit court and to cause the prosecution for contempt for failure to observe subpoenas. See Bylaws W. Va. State Bar, Bylaws, art. VII, §§ 6-7.

The record shows that the State bar carefully followed the above provisions. The complaint in this case was referred to the committee on unlawful practice which caused a hearing to be held on the complaint before a sub-committee. Following the hearing by the sub-

committee and the decision by the committee, the State bar attempted to get Allstate "to enter into an agreement to desist from [its] unlawful practices," as explicitly provided for in § 2 of Article VII of the bylaws.

Following Allstate's refusal to enter into the agreement to desist, as requested by the State bar, the State bar was powerless to take coercive action against Allstate because neither the statutes nor regulations gave it coercive power. But the State bar did have the power "to institute appropriate proceedings in the name of the West Virginia State Bar . . . in any court having jurisdiction," also in accordance with § 2. W. Va. State Bar Bylaws, art. VII, § 2. A case illustrating the method by which the State bar enforces its decisions in the West Virginia state courts is *State Bar v. Earley*, 109 S.E.2d 420 (W. Va. 1959).

Although Allstate might have continued to distribute the offending pamphlet with impunity so far as immediate compulsion was available, the State bar having not instituted proceedings in a court with jurisdiction, Allstate did not merely decline to "enter into an agreement" but chose to shortcut the state procedure by filing this case in the district court to present the same question it had unsuccessfully presented to the Committee, that of First Amendment freedom to circulate the pamphlet. In short, Allstate attempted to preempt the West Virginia procedure by filing this federal suit in the district court.

While *Brown & Root* was decided on slightly different facts, it is, nevertheless, a construction of the *Rooker-Feldman* doctrine, and it holds that *Rooker-Feldman* bars inferior federal court review, not only of final decisions of state courts, but also of interlocutory orders. See *Brown & Root*, 211 F.3d at 198-199. We do not perceive any difference for the purpose of analysis here between an interlocutory order of a state court of record such as a circuit court in West Virginia and the decision of the committee on unlawful practice, an agency of the Supreme Court of Appeals of West Virginia. The regulation of the practice of law is entrusted in West Virginia to the Supreme Court of Appeals and those judicial bodies under that court subject to its orders, of which the committee on unlawful practice is one. It is difficult to conceive a matter closer or more important to the State of West Virginia, not to mention her people, than the question of who is to

practice law in that State. The question is one particularly suited for decision by the West Virginia courts under the supervision of the Supreme Court of Appeals of that State.

We conclude here, as we did in *Brown & Root*:

Dominating this case is a simple fact: the [federal plaintiff] objects to the outcome of a judicial proceeding and filed a separate suit to get around it.

*Brown & Root*, 212 F.3d at 202 (quoting *Ash Assocs. v. Village of Rosemont*, F.2d 726, 727 (7th Cir. 1993)).

We thus hold that the *Rooker-Feldman* doctrine deprived the district court of jurisdiction to review the decision of the committee on unlawful practice of law.

The judgment of the district court is accordingly

*AFFIRMED.*[4]

---

[4]Allstate concedes that it could have sought relief in the West Virginia State courts, but candidly argues that it "has the right to choose the forum" and "prefers to vindicate its rights in federal court." Memo of June 30, 1998, p.13. We do not consider any application of any theory akin to exhaustion of remedies.

There also may be, although largely obscured, a question of ripeness. We express no opinion as to that question, for our decision should be no broader than that necessary to dispose of the question before us.