**Frank R. MARQUARDT, et al.**

v.

**SUPERVISOR OF THE DEPARTMENT OF ASSESSMENTS AND TAXATION OF CALVERT COUNTY.**

No. Civ.A. WMN–01–2074.

United States District Court, D. Maryland.

Feb. 1, 2002.

---

Frank R. Marquardt, Alexandria, VA, Pro se.

Mary A. Marquardt, Alexandria, VA, Pro se.

J. Joseph Curran, Jr., Office of the Attorney General, Jeffrey Gerald Comen, Baltimore, MD, for Defendant.

### MEMORANDUM

NICKERSON, District Judge.

Before the Court are Defendant's Motion to Dismiss or for Summary Judgment (Paper No. 7), and Plaintiff's Motion for Summary Judgment (Paper No. 11). The motions have been fully briefed and are ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted and Plaintiff's motion will be denied.

## I. BACKGROUND[1]

Plaintiffs Frank and Mary Marquardt own several acres of woodlands in Calvert County, Maryland. In 1988, the Marquardts entered into a Forest Conservation and Management Agreement ("FCMA") with the Department of Natural Resources ("DNR"). The FCMA provided that Plaintiffs would maintain their land in an undeveloped status, in exchange for which the State agreed to "freeze" the corresponding real property assessment at its 1988 value for a 15 year period. In addition, a 1987 boundary survey of the property indicated that it was one parcel of five acres or more, thereby apparently qualifying the property for an "agricultural use assessment" that yielded a substantially lower assessment value than the fair market value. From 1988 until 1995, Plaintiff's woodland property was taxed based on the 1988 agricultural use assessment.

In 1995, the then-Supervisor of the Department of Assessments and Taxation informed Plaintiffs that the agricultural use assessment had been improperly applied, because Plaintiff's woodlands actually consisted of several contiguous lots, none of which was 5 acres or larger. Plaintiffs were told that beginning in 1995, the land would be reassessed at the 1988 full cash value for the remainder of the FCMA.

The Marquardts appealed the 1995 reassessment to the Circuit Court for Calvert County, whereupon the reassessment was upheld.[2] *Marquardt v. Supervisor,* Civil Action No. 96–598 (March 18, 1998). That decision was in turn affirmed by the Maryland Court of Special Appeals in an unreported opinion, and on August 26, 1999, the Maryland Court of Appeals denied certiorari. Shortly thereafter, Plaintiffs challenged the 1997 assessment of the property, which was the same 1988 full cash value as the 1995 assessment. On December 16, 1999, the Maryland Tax Court (Martz, J.) issued an order affirming the 1997 assessment.

On June 29, 2001, the Circuit Court for Calvert County reviewed and affirmed the order of the Tax Court. *See,* Civil Action No. 4 C–99–1287.[3] The court found that the Tax Court had correctly determined that Plaintiff's challenge to the 1997 assessment was precluded by the doctrine of collateral estoppel, because the case presented the same issues as were fully litigated in the challenge to the 1995 assess-

---

1. The facts and procedural history set forth herein are undisputed by the parties.

2. In that decision, the Circuit Court (Sothoron Jr., J.) held that: (1) the Supervisor could not be equitably estopped from reassessing the property, since that doctrine cannot be applied against the state in performance of its governmental capacity; and (2) the reassess-

ment was based on substantial evidence. *See,* Civil No. 4–C–99–1287, at 4–5 (summarizing Judge Sothoron's opinion).

3. According to Defendant, this decision is pending review by the Maryland Court of Special Appeals. Plaintiffs made no mention of the appeal in their pleadings.

ment. *Id.* at 9. The court also held that the Tax Court's factual findings, namely, that the agricultural assessment does not apply to property comprised of contiguous multiple lots such as Plaintiffs', was supported by substantial evidence. *Id.* at 12. Finally, the Circuit Court considered and rejected the Marquardts' claim that the State's reassessment of the property before the end of the 15–year FCMA period had violated the Contract Clause of Article I of the United States Constitution.[4] Constitution. *Id.* at 14–15. Specifically, the circuit court found that the 1995 reassessment (and thus the 1997 assessment at the same level) did not constitute a "change in law" that impaired the contractual relationship at issue. *Id.* at 14 (*citing General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)).

On July 16, 2001, Plaintiffs filed this action, claiming again that the 1995 reassessment violates the Contract Clause of the U.S. Constitution.[5] Defendant has moved to dismiss the Complaint on the ground that, *inter alia*, this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine.

## II. DISCUSSION

 The *Rooker–Feldman* doctrine provides that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine "precludes not only review of adjudications of the state's highest court, but also the decisions of its lower courts." *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 199 (4th Cir.1997). The purpose of the doctrine is to safeguard our dual system of government, in which "the independence of state courts would surely be compromised if every adverse decision in state court merely rang the opening bell for federal litigation of the same issues." *Brown & Root v. Breckenridge*, 211 F.3d 194, 198 (4th Cir.2000).

 Under the *Rooker–Feldman* doctrine, lower federal courts are generally barred from not only considering issues actually presented to and decided by a state court, but also hearing constitutional claims that are "inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Allstate Insurance Co. v. West Virginia State Bar*, 233 F.3d 813, 816 (4th Cir.2000) (*quoting Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir.1997)). An issue is deemed to be "inextricably intertwined" if the federal claim succeeds "only to the extent that the state court wrongly decided the issues before it." *Allstate Insurance Co.* at 819 (*quoting Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)). Also, the party must have had a "reasonable opportunity to raise his federal claim in state proceedings." *Brown & Root* at 201 (*quoting Long v. Shorebank Devel. Corp*, 182 F.3d 548, 558 (7th Cir. 1999)).

---

**4.** The Circuit Court noted that it was unclear whether Plaintiffs had raised the Contract Clause issue before the Tax Court, but because Plaintiffs raised it "in numerous other documents" filed with the court, the Circuit Court addressed the Contract Clause issue separately from the findings and application of law by the Tax Court. Civil Action No. 4–C–99–1287, at n. 10.

**5.** Plaintiffs also assert an "interrelated" claim that the Supervisor's interpretation of the Maryland agricultural use assessment's exclusion of land less than 5 acres violates Article 43 of the Maryland State Constitution. Complaint at ¶ 5.

■ Here, Plaintiffs have provided no indication that they are presenting the Court with any claims other than those they have already litigated in the state courts. In fact, Plaintiffs state in their Complaint that:

Plaintiffs have appealed this violation ... thru all levels of the Maryland Court system for the year 1995 tax assessment and recently all levels again up thru the Circuit Court for Calvert County, Maryland, giving the Courts of Maryland every chance to correct this violation of Maryland's Article 43 of the Constitution and violation of [the Contract Clause of the U.S. Constitution].

Complaint at ¶ 4.

Furthermore, nothing in the pleadings nor in the Circuit Court's opinion suggests that Plaintiffs did not have a "reasonable opportunity" to raise their federal claim in the state proceedings. As the Fourth Circuit has observed in another case requiring application of *Rooker–Feldman,* "[d]ominating this case is a simple fact: [The federal plaintiff] objects to the outcome of a judicial proceeding and filed a separate suit to get around it." *Brown & Root* at 202 *(quoting GASH Assocs. v. Village of Rosemont,* 995 F.2d 726, 727 (7th Cir. 1993)). The Marquardts may not, however, obtain what amounts to appellate review of a state court decision in federal district court. Rather, they must appeal unfavorable state court rulings through the state judicial system, and then to the United States Supreme Court if they so choose.

## III. CONCLUSION

■ For the foregoing reasons, Plaintiffs' Complaint must be dismissed.[6] A separate order consistent with this memorandum will issue.

### *ORDER*

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this day of February, 2002, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That Defendant's Motion to Dismiss or for Summary Judgment (Paper No. 7) is hereby GRANTED;

2. That Plaintiff's Motion for Summary Judgment (Paper No. 11) is hereby DENIED;

3. That this case is hereby CLOSED;

4. That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58; and

5. That the Clerk of the Court shall mail or transmit copies of the foregoing memorandum and this order to Plaintiffs and all counsel of record.

---

**6.** Were this Court to exercise jurisdiction in this case, Plaintiffs' action would be barred by the Eleventh Amendment. Defendant is an employee of the Maryland State Department of Assessments and Taxation, *see* Md.Code Ann. Tax–Property § 2–105 (2001 Repl.Vol.), which is a department of Maryland State government. *Id.* at § 2–101. State officers acting in their official capacity are entitled to Eleventh Amendment protection. *See, Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Plaintiffs seek retrospective, monetary relief from the state, and therefore the exception allowing suits against state officers for prospective, equitable relief does not apply. *See, Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).