UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PROENGLISH; CLIFFORD W. COLWELL,
JR., M.D.; JOSEPH F. DAUGHERTY,
M.D.; DONALD KUNDEL, M.D.; K. C.
MCALPIN,

        *Plaintiffs-Appellants,*

        and

ANTHONY BULL, M.D.,

        *Plaintiff,*

        v.

GEORGE W. BUSH, President of the
United States; JOHN D. ASHCROFT,
Attorney General of the United
States; TOMMY G. THOMPSON,
Secretary, U.S. Department of
Health and Human Services,

        *Defendants-Appellees.*

No. 02-2044

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-02-356-A)

Argued: April 2, 2003

Decided: May 15, 2003

Before WILKINS, Chief Judge, SHEDD, Circuit Judge,
and Terry L. WOOTEN, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Barnaby White Zall, WEINBERG & JACOBS, L.L.P., Rockville, Maryland, for Appellants. Tovah Renee Calderon, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Ralph F. Boyd, Jr., Assistant Attorney General, Mark L. Gross, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Appellants filed this case challenging, on constitutional and statutory grounds, the legality of Executive Order No. 13,166 ("EO 13,166") and policy guidance documents promulgated thereunder by the United States Department of Justice ("DOJ") and the United States Department of Health and Human Services ("HHS").[1] The district court dismissed the case without prejudice based on its determination that Appellants' claims were not ripe for judicial review. Because we find that Appellants failed to allege a proper basis for the district court to exercise subject matter jurisdiction, we affirm.[2]

---

[1]Appellees are the President of the United States, the Attorney General of the United States, and the Secretary of HHS. We will hereinafter refer to them collectively as "the government."

[2]Although the district court dismissed the case without prejudice, we have appellate jurisdiction. *See Domino Sugar Corp. v. Sugar Workers Local 392*, 10 F.3d 1064, 1067 (4th Cir. 1993).

I

On August 11, 2000, President Clinton issued EO 13,166, which directs federal agencies to develop guidance that will help ensure that persons with limited English proficiency ("LEP") have meaningful access to federally funded services. *See* 65 Fed. Reg. 50,121 (Aug. 11, 2000). To assist agencies in developing LEP guidance, EO 13,166 incorporates by reference the contemporaneously issued DOJ General Policy Guidance, *see* 65 Fed. Reg. 50,123 (Aug. 16, 2000), and it instructs each federal agency to issue LEP guidance consistent with the DOJ General Policy Guidance.

To fulfill its obligations as a grant agency subject to EO 13,166, DOJ issued its own agency-specific guidance to DOJ grant recipients on January 16, 2001. *See* 66 Fed. Reg. 3,834 (Jan. 16, 2001). Following republication for public comment, DOJ issued its agency-specific guidance in final form on June 18, 2002. *See* 67 Fed. Reg. 41,455 (June 18, 2002).

Likewise, HHS published its LEP guidance document to recipients of HHS financial assistance on August 30, 2000, *see* 65 Fed. Reg. 52,762 (Aug. 30, 2000), and republished it for public comment on February 1, 2002. *See* 67 Fed. Reg. 4,968 (Feb. 1, 2002). Although HHS has not issued its guidance document in final form, the HHS guidance documents have been effective since August 30, 2000.

The underlying basis for EO 13,166 is the prohibition of national origin discrimination set forth in Title VI of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000d. According to the government, EO 13,166 and the DOJ and HHS agency guidance documents "clarify the federal government's longstanding view that, in certain circumstances, regulations implementing Title VI require recipients of federal financial assistance to provide language assistance to LEP persons in order to avoid potential discrimination on the basis of national origin." *Brief of Appellees*, at 7.

Appellants Clifford Colwell, Jr., Joseph Daugherty, and Donald Kundel are physicians who receive federal financial assistance and are, therefore, subject to Title VI. Colwell and Daugherty claim that under EO 13,166 and the DOJ and HHS guidance policies, they

would have to provide translators in any requested language, at their own cost. Kundel claims that the policies might be applied to his professional reports and, if so, it would be impossible for him to comply because of the costs. Each physician also claims that he would incur actual and potential liability for forced speech in languages other than English.

Appellant ProEnglish is a non-profit advocacy organization that advocates state "official English" laws. ProEnglish claims that the policies would undermine or eliminate the English language goals and programs which it has conducted and will conduct in the future, and that they will make its activities much more difficult. McAlpin claims that the policies have harmed his efforts as Executive Director of ProEnglish by making it more difficult for him to accomplish his goals of protecting English as the common language of the United States and making English the official language of the federal government.

Appellants filed this action seeking "declaratory and injunctive relief against Executive Branch policy changes, not authorized by Congress, which force medical service providers and others, without reimbursement, to speak in a particular manner not of their choosing, and which expose providers to liability under both federal law and malpractice claims." J.A. 7. Appellants characterized their claims as being threefold: (1) "that a person's choice of language is not 'national origin' under Title VI;" (2) that the government has "no authority to so equate language and national origin;" and (3) that the government's "attempts to impose such an equation by Executive Order and departmental 'policy guidance' violated constitutional and procedural protections." *Id.*[3]

The government moved to dismiss, arguing that the district court lacked subject matter jurisdiction, venue was improper, and the complaint failed to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6). Concerning the issue of

---

[3]Appellants actually asserted four causes of action: (1) violation of the First Amendment; (2) violation of the First, Ninth, and Tenth Amendments; (3) violation of the Administrative Procedures Act; and (4) violation of several "Regulatory Fairness Laws" and the Fifth Amendment.

jurisdiction, the government asserted that the claims were not ripe for review and that Appellants lacked standing to bring the claims.

The district court heard oral arguments on the motion to dismiss. At the outset, the district court recognized that the motion involved several issues, but it directed the argument to the issue of ripeness. During the arguments, the district court noted that "the critical issue on the ripeness argument is whether or not there is actually in place a regulation that can be imminently imposed upon these plaintiffs, so that this is not an advisory type of opinion that I'm being asked to give but actually that there's something imminent, some imminent injury or harm to these plaintiffs." J.A. 186. After hearing oral arguments, the district court ruled:

> The issues are extremely interesting, but I am still convinced that the plaintiffs are not able to surmount the fundamental issues [sic] that this case in my view is not yet ripe. There is no evidence either in the complaint as it's pled or in what you've brought before me yet that any of the specific plaintiffs in this lawsuit have actually been threatened with any kind of immediate action by HHS.
>
> Although the guidance — the August 16 document does say it's effective, it also says it's open for comment. It's obviously still in my view a document in flux, and what is being asked of the Court at this point is in my view an advisory opinion as to something that is not yet in effect affecting these plaintiffs directly.

*Id*. at 191-92.

The district court then found that neither EO 13,166 nor the DOJ policy documents were properly at issue in the case, and it directed the argument to the question of whether McAlpin had standing. After hearing the parties on the standing issue, the district court stated:

> As I said earlier, I'm going to dismiss this complaint without prejudice based on my conclusion that the issues are not yet ripe.

> The standing issue as to the director of ProEnglish is very — Mr. McAlpin's position is very interesting. I think, though, that the government's argument is better on this point that simply because a government policy or a government regulation makes one's job more difficult is not in my view a sufficiently high problem to give one standing.
>
> There is not in my view a sufficient — even though you argue to the contrary . . . that there has been a labeling effect because of this regulation, I think it's too tenuous. This is not the kind of government action that really is in my view chilling or affecting speech to the degree that you find in these other cases that you use.

J.A. 197-98.


## II


"Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. Doctrines like standing . . . and ripeness are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice." *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991).

Ripeness concerns the appropriate timing of judicial consideration of a claim. *Virginia Soc'y for Human Life, Inc. v. Federal Election Comm'n*, 263 F.3d 379, 389 (4th Cir. 2001). The doctrine's basic rationale "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). In determining whether a claim is ripe, courts examine the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration. *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998). This inquiry requires courts to consider (1) whether delayed review would cause hardship to the party seeking review; (2) whether judicial intervention would inappropriately interfere with further

administrative action; and (3) whether the courts would benefit from further factual development of the issues presented. *Id.*

Standing concerns "whether the plaintiff is the proper party to bring th[e] suit. . . ." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The "central purpose of the standing requirement [is] to ensure that the parties before the court have a concrete interest in the outcome of the proceedings such that they can be expected to frame the issues properly." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994). In determining whether a party has standing to bring a claim, courts examine (1) whether that party has "suffered an injury in fact, *i.e.*, 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical,'" (2) whether the injury is "fairly traceable to the actions of the Defendants, rather than the result of actions by some independent third party not before the court," and (3) whether it is "likely, as opposed to merely speculative, that her injuries will be redressed by a favorable decision." *Dixon v. Edwards*, 290 F.3d 699, 711 (4th Cir. 2002) (citations omitted).

The burden of establishing ripeness and standing rests upon the party asserting the claim. *Renne v. Geary*, 501 U.S. 312, 316 (1991); *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002). We conduct a de novo review of the district court's dismissal for lack of subject matter jurisdiction. *Allstate Ins. Co. v. West Va. State Bar*, 233 F.3d 813, 816 (4th Cir. 2000).[4]

---

[4]Appellants did not request that the district court go beyond the allegations of the complaint in considering the motion to dismiss, although they did refer generally to evidence that they contended supported their ripeness position, *see* J.A. 139 n.14 ("Plaintiffs have significant evidence that these policies are already being enforced"); J.A. 185 (referring to "a whole series of things that aren't in evidence yet but would come in"); and the district court likewise referred to matters beyond the complaint. *See* J.A. 191 ("There is no evidence either in the complaint as it's pled or in what you've brought before me yet that any of the specific plaintiffs . . . have actually been threatened with any kind of immediate action by HHS"). Notwithstanding these comments, our review of the record in its entirety convinces us that the district court treated this motion as a 12(b)(6)-type motion. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

After reviewing the parties' briefs and the applicable law, and having had the benefit of oral argument, we conclude that Appellants failed to meet their burden of establishing that the district court had subject matter jurisdiction over their claims. Accordingly, we affirm the district court's order dismissing the case without prejudice for lack of subject matter jurisdiction.[5]

*AFFIRMED*

---

[5]Although we affirm the dismissal of this case, we do not hold that the HHS guidance policy is not "final" for purposes of a legal challenge under proper circumstances. Indeed, at oral argument, counsel for the government conceded the finality of the HHS guidance policy because it is currently being used.