**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BROWN & ROOT, INCORPORATED,
Plaintiff-Appellant,

v.

WARREN J. BRECKENRIDGE; CHARLES
LEE BOOKER,
Defendants-Appellees.

No. 99-1831

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-99-254-2)

Argued: March 2, 2000

Decided: May 2, 2000

Before WILKINSON, Chief Judge, and WILLIAMS
and MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Williams and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** W. Carl Jordan, VINSON & ELKINS, L.L.P., Houston,
Texas, for Appellant. Leslie Renee Stotler, RANSON LAW
OFFICES, Charleston, West Virginia, for Appellees. **ON BRIEF:**
Susanne K. Sullivan, VINSON & ELKINS, L.L.P., Houston, Texas;
Bryan R. Cokeley, STEPTOE & JOHNSON, Charleston, West Vir-

ginia, for Appellant. J. Michael Ranson, Cynthia M. Salmons, RAN-SON LAW OFFICES, Charleston, West Virginia, for Appellees.

_____

## OPINION

WILKINSON, Chief Judge:

Appellant Brown & Root filed a motion in state court to compel arbitration of appellees' employment discrimination claims. The state court denied this motion. Brown & Root sought appellate review of this decision first in the West Virginia Supreme Court of Appeals and then in the United States Supreme Court. The state supreme court declined to issue a writ of prohibition. Brown & Root then petitioned a federal district court to compel arbitration. While this petition was pending, the United States Supreme Court denied certiorari to review the state court decision. The district court dismissed the petition for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. Because Brown & Root was in essence seeking appellate review of a state court decision by a federal district court in violation of Rooker-Feldman, we affirm the judgment of the district court.

I.

Appellant Brown & Root employed appellees Warren Breckenridge and Charles Lee Booker as construction and maintenance workers. Upon commencing work with Brown & Root, Breckenridge and Booker each signed an employment contract. Each contract contained an arbitration clause covering employment disputes. Brown & Root terminated both men in October 1996.

In September 1997, Breckenridge and Booker filed an employment discrimination suit against Brown & Root and two supervisors in the Circuit Court of Kanawha County, West Virginia. Breckenridge and Booker alleged that they were terminated because of their race in violation of the West Virginia Human Rights Act (WVHRA), W. Va. Code § 5-11-1 to -20 (1999). In December 1997, Brown & Root filed a motion in the state trial court to compel Breckenridge and Booker to arbitrate their claims as required by their employment contracts.

2

In September 1998, the state court heard argument on Brown & Root's motion. The proceedings focused primarily on the question of whether the Federal Arbitration Act (FAA), 9 U.S.C.§ 1 et seq. (1994), governed the instant dispute. Brown & Root argued that the FAA required appellees to submit their claims to arbitration pursuant to their employment agreements. The state court denied the motion, holding that "an employee['s] right to a trial by jury under the West Virginia Human Rights Act cannot be waived or contracted away, even though as a condition of employment an agreement to arbitrate exists between the parties."

Brown & Root then petitioned the West Virginia Supreme Court of Appeals for a writ of prohibition. Specifically, Brown & Root asked the state supreme court to vacate the trial court's ruling and to bar any further proceedings until the parties could complete arbitration. Brown & Root states that it sought this writ because West Virginia does not provide a statutory right of appeal from an interlocutory order denying a motion to compel arbitration. See W. Va. Code § 58-5-1 (Supp. 1999) (only final judgments of circuit courts are appealable to state supreme court); James M.B. v. Carolyn M., 456 S.E.2d 16, 19 (W. Va. 1995) ("[A] case is final only when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." (internal quotation marks omitted)). The West Virginia Supreme Court has stated that it will issue a writ of prohibition "to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." State ex rel. Charleston Mail Ass'n v. Ranson, 488 S.E.2d 5, 9 (W. Va. 1997) (internal quotation marks omitted). Brown & Root argued in its petition that the state trial court erred in finding that the FAA does not apply to appellees' WVHRA claims. In December 1998, the petition was denied.

Brown & Root then petitioned the United States Supreme Court for a writ of certiorari pursuant to 28 U.S.C. § 1257(a) (1994). Brown & Root asserted that the state trial court's decision constituted a final judgment or decree for the purpose of certiorari jurisdiction under

3

Southland Corp. v. Keating, 465 U.S. 1, 6-7 (1984). Just as in its petition to the state supreme court, Brown & Root argued that the state trial court erred in finding that the FAA does not apply to appellees' WVHRA claims. The petition for certiorari was denied on May 17, 1999.

In March 1999, while its petition for certiorari was pending, Brown & Root filed suit against Breckenridge and Booker in the United States District Court for the Southern District of West Virginia. Brown & Root filed this federal action in an effort to bring the state judicial proceedings to a halt and direct the matter to arbitration. Brown & Root then petitioned the district court to compel arbitration of appellees' employment discrimination claims pursuant to § 4 of the FAA.

Appellees filed a motion to dismiss Brown & Root's complaint. On May 21, 1999, the district court granted the motion on the ground that the court lacked subject matter jurisdiction under the Rooker-Feldman doctrine. See Brown & Root, Inc. v. Breckenridge , 187 F.R.D. 259 (S.D.W. Va. 1999). The district court found that Brown & Root was essentially asking it to overturn the state court order denying arbitration. The district court stated that Rooker-Feldman prohibited it from exercising what would amount to appellate jurisdiction over a state court decision. Brown & Root now appeals.

II.

The Rooker-Feldman doctrine provides that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); see also Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). "[J]urisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997). Only habeas corpus petitions or actions sounding in habeas corpus are excepted from the Rooker-Feldman bar. See Plyler, 129 F.3d at 732, 733.

Rooker-Feldman bars not only direct review of issues actually decided by the state court, but also consideration of those claims

4

which are "inextricably intertwined" with state court decisions. See Feldman, 460 U.S. at 486-87; Plyler, 129 F.3d at 731. The "inextricably intertwined" prong of the doctrine bars a claim that was not actually decided by the state court but where "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." Plyler, 129 F.3d at 731 (internal quotation marks omitted). Under either the "actually decided" or the "inextricably intertwined" prong, the principle is the same:"[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994).

Rooker-Feldman is one of a number of doctrines that safeguards our dual system of government from federal judicial erosion. Cf. Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 286 (1970) ("[F]rom the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other with ultimate review in[the Supreme] Court of the federal questions raised in either system."). The independence of state courts would surely be compromised if every adverse decision in state court merely rang the opening bell for federal litigation of the same issues.

Even more fundamentally, the Rooker-Feldman doctrine is rooted in the principle of separation of powers. It rests on two basic propositions of federal jurisdiction. First, Congress has vested the authority to review state court judgments in the United States Supreme Court alone. See 28 U.S.C. § 1257(a); Feldman, 460 U.S. at 482. The Rooker-Feldman doctrine thus "interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in [the Supreme] Court." Asarco Inc. v. Kadish, 490 U.S. 605, 622 (1989). Second, Congress has empowered the federal district courts to exercise only original jurisdiction. See, e.g., 28 U.S.C. § 1331, 1332; Rooker, 263 U.S. at 416. "While the lower federal courts were given certain powers in the [Judiciary Act of 1789], they were not given any power to review directly cases from state courts, and they have not been given such powers since that time." Atlantic Coast

5

Line, 398 U.S. at 286. And it is well settled that "Congress has the constitutional authority to define the jurisdiction of the lower federal courts." Keene Corp. v. United States, 508 U.S. 200, 207 (1993).

Importantly, "the Rooker-Feldman doctrine precludes not only review of adjudications of the state's highest court, but also the decisions of its lower courts." Jordahl v. Democratic Party of Virginia, 122 F.3d 192, 199 (4th Cir. 1997); accord FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996) ("We have interpreted the doctrine to encompass final decisions of lower state courts."). "The Rooker-Feldman doctrine is in no way dependent upon the temporal procedural posture of the state court judgment." Jordahl, 122 F.3d at 202."[R]ather, the doctrine reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal." Id.

Finally, Rooker-Feldman also applies to interlocutory orders issued by state courts. Indeed, "[i]t cannot be the meaning of Rooker-Feldman that, while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders." Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 138 (2d Cir. 1997) (internal quotation marks omitted); see also Charchenko v. City of Stillwater, 47 F.3d 981, 983 n.1 (8th Cir. 1995) (noting that "Rooker-Feldman is broader than claim and issue preclusion because it does not depend on a final judgment on the merits").

III.

Brown & Root argues that Rooker-Feldman does not bar the instant action because consideration of its federal petition would not require the federal district court to engage in direct review of the state court order. The state court decision was allegedly based entirely on its construction of the WVHRA and did not address the preemptive effect of the FAA on state law. Brown & Root's federal petition to compel arbitration, on the other hand, is based entirely on§ 4 of the FAA. Brown & Root contends that it thus asserts an unresolved and independent federal claim based on the FAA and its preemptive effect on state law.

6

We disagree. What Brown & Root seeks now is nothing more than appellate review of the state court ruling in the lower federal courts. Brown & Root requests the exact same relief that the state trial court refused to grant. Brown & Root also relies on the same legal grounds for relief in both its state and federal motions-- namely, the preemptive effect of the FAA on appellees' state law claims. The state court heard extensive argument on this issue and specifically addressed the applicability of the FAA in the proceedings before it.

A brief review of the state court proceedings demonstrates that Brown & Root raised and the state court actually decided the question of the FAA's application to this case. See Plyler, 129 F.3d at 732 ("[R]eview of the proceedings in state court is necessary" to determine whether an issue was actually decided.). Early in the hearing on its motion to compel arbitration, Brown & Root argued:

> The outcome of this motion, Your Honor, we believe, turns on the question of whether federal arbitration law or state arbitration law governs the arbitration agreement entered into between the two plaintiffs and Brown & Root. Federal arbitration law, of course, is embodied in the Federal Arbitration Act, and we take the position that that statute controls this dispute rather than state law. The Federal Arbitration Act does apply.

Counsel then discussed federal and state case law relevant to the question of whether the FAA applies to a given claim. Brown & Root relied chiefly on Southland Corp. v. Keating, 465 U.S. 1 (1984), and Perry v. Thomas, 482 U.S. 483 (1987), arguing that those cases were analogous situations where the Supreme Court held that the FAA preempted a state statute with respect to a particular claim. Brown & Root also relied on Rashid v. Schenck Constr. Co., 438 S.E.2d 543 (W. Va. 1993), where the state supreme court addressed the FAA's application to an arbitration agreement. The relief which Brown & Root requested was "to have this case dismissed, or in the alternative, stayed and that an order be [entered] compelling the plaintiffs to submit their discrimination claims to arbitration."

During Brown & Root's reply argument, the following colloquy took place between the court and Brown & Root:

7

> THE COURT: What is your strongest position that the Federal Act preempts this? What is the strongest position that you have on that?
>
> BROWN & ROOT: That is the salient issue, Your Honor.
>
> THE COURT: Why does that apply? Why does the Federal Act apply here? What is your strongest argument?

Brown & Root went on to argue that <u>Southland</u> and <u>Perry</u> controlled, while the court suggested that those cases were distinguishable. The court then said it was going to deny the motion, stating that parties to an employment agreement could not contract out of the WVHRA. The court also noted that if the FAA did indeed preempt the state claims in this case, then the state supreme court could so hold. The court's subsequent order denying the motion referenced these proceedings and concluded: "The Court determines that an employee['s] right to a trial by jury under the West Virginia Human Rights Act cannot be waived or contracted away, even though as a condition of employment an agreement to arbitrate exists between the parties."

A comparison of Brown & Root's federal complaint with its position in state court is also instructive:

> Brown & Root is aggrieved by Defendants' refusal to honor their agreements and submit their claims to arbitration, and by the state courts' disregard of federal law, and is compelled to initiate this action to obtain enforcement of the parties' agreements to arbitrate pursuant to the FAA.

This complaint seeks precisely the same relief denied by the state trial court. In fact, Brown & Root claims that the West Virginia state courts have in part caused its present injury by refusing to grant the relief sought. Further, Brown & Root's brief to the district court made much the same argument that Brown & Root presented to the state court -- an argument which the state court had already rejected.

In light of all of this, Brown & Root's contention that the state court's ruling "was based solely on its interpretation of West Virginia

8

state law" and that the federal petition "presents an issue unresolved by the state court" appears disingenuous. Indeed, it is difficult to identify any substantive difference between the issues decided by the state trial court and those presented to the federal district court. Brown & Root makes much of the fact that the state court's written order did not specifically mention the FAA. But this resort to literalism flies in the face of the ample record showing that the FAA issue was argued before and decided by the state court. Even without the benefit of the transcript of the state proceedings, this court would have little difficulty finding that Brown & Root's federal claim is "inextricably intertwined" with the state court judgment. The instant litigation thus "essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court." Plyler, 129 F.3d at 733. For when a party sues in federal district court to readjudicate the same issues decided in the state court proceedings, that action is in essence an attempt to obtain direct review of the state court decision in the lower federal courts in contravention of Rooker-Feldman. See Asarco, 490 U.S. at 622-23.

Not only did the state trial court decide the FAA issue, but Brown & Root also sought appellate review through the statutorily prescribed channels of petitions to the state supreme court and United States Supreme Court. Indeed, Brown & Root's petitions to these courts belie its present argument that the state trial court did not decide the applicability of the FAA. For example, in its petition to the state supreme court for a writ of prohibition, Brown & Root contended:

> Judge Kaufman's ruling . . . is clearly contrary to the FAA, as interpreted by the United States Supreme Court and other courts. Judge Kaufman's holding that agreements to arbitrate claims arising under the West Virginia Human Rights Act are not enforceable under the FAA violates these fundamental constitutional principles and must be vacated. . . . The respondent judge committed clear error by finding that plaintiffs' claims under the Human Rights Act are not subject to the Federal Arbitration Act.

Similarly, in its petition to the United States Supreme Court for a writ of certiorari, Brown & Root asserted:

9

> [T]he sole basis for the trial court's decision was its view
> that the right to trial by jury preserved in the West Virginia
> Human Rights Act controlled over the FAA, notwithstand-
> ing decisions of [the United States Supreme] Court to the
> contrary. . . . [T]he trial court refused to follow these deci-
> sions, concluding instead that Southland and Perry were dis-
> tinguishable because they did not involve "human rights."

Brown & Root argues that the instant action should nonetheless be
allowed to proceed because it was deprived of a "meaningful opportu-
nity to obtain appellate review." This argument, however, misstates
the law. The relevant inquiry is whether a party had a "reasonable
opportunity to raise his federal claim in state proceedings." E.g., Long
v. Shorebank Devel. Corp., 182 F.3d 548, 558 (7th Cir. 1999) (inter-
nal quotation marks omitted); Wood v. Orange County, 715 F.2d
1543, 1547 (11th Cir. 1983). Rooker-Feldman ordinarily does not bar
a federal claim where such an opportunity was lacking, for "an issue
cannot be inextricably intertwined with a state court judgment if the
plaintiff did not have a reasonable opportunity to raise the issue in
state court proceedings." Long, 182 F.3d at 558. For example, in
Long, the plaintiff was allowed to present her federal claims in federal
court because those claims "could not have been presented before [the
state trial court]." Id. at 560. The Rooker-Feldman bar likewise did
not apply in Wood because the "plaintiffs did not have a reasonable
opportunity to raise their claims in the state trial court where judg-
ment was entered or on appeal of that judgment." 715 F.2d at 1548
(emphasis added).

Here Brown & Root not only had a reasonable opportunity to raise
its federal claim in state court, but it in fact did so and obtained a state
court ruling on this claim. Brown & Root then sought a writ of prohi-
bition from the state supreme court. The West Virginia Supreme
Court of Appeals exercised its discretion against issuing a writ.
Whether this constituted a "meaningful opportunity to obtain appel-
late review" is not the question. Rather, all that matters is that Brown
& Root undeniably enjoyed a reasonable opportunity to raise its FAA
claim in state court. Rooker-Feldman requires no more.

In this connection, § 16 of the FAA does not allow Brown & Root
to escape the Rooker-Feldman bar. Section 16 provides for immediate

10

appeal of an order denying a § 4 petition to compel arbitration. 9 U.S.C. § 16(a)(1)(B); see also Harrison v. Nissan Motor Corp., 111 F.3d 343, 348 (3d Cir. 1997) ("[A]n order denying a motion to compel arbitration under the Federal Arbitration Act . . . is immediately appealable."). Brown & Root suggests that limiting its state appellate remedies to a writ of prohibition entitles it to bring the instant federal action. We are not in a position, however, to demand that the state restructure its appellate system in order for its judgments to be given effect.

Brown & Root also relies on the Second Circuit's decision in Distajo, 107 F.3d 126. The Distajo court declined to apply the Rooker-Feldman bar to petitions in federal district court to compel arbitration of claims that had been filed in state court. But critical to Distajo was the court's observation that "[w]e cannot say that [the federal plaintiff] is attempting to appeal from any of the state court decisions." 107 F.3d at 138. There is no indication in Distajo that the federal plaintiff had previously asked a state court to compel arbitration. Here, by contrast, Brown & Root's federal petition comes on the heels of the state court's rejection of practically the same motion.

Whether or not the state court erred in its ruling on the merits of Brown & Root's motion to compel arbitration is immaterial. We make no judgment whatsoever on the correctness of the state court's ruling concerning the applicability of the FAA in this case. Indeed, it is well established that state courts "have it within both their power and their proper role to render binding judgments on issues of federal law, subject only to review by [the United States Supreme] Court." Asarco, 490 U.S. at 620. As a jurisdictional doctrine, Rooker-Feldman precludes the lower federal courts from second-guessing the merits of the state court judgment. See Jordahl, 122 F.3d at 202. Rather, "[t]he pivotal inquiry is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." Long, 182 F.3d at 555 (internal quotation marks omitted). Here Brown & Root presents no independent federal claim. The district court thus properly declined to disturb the state court judgment.

IV.

"Dominating this case is a simple fact: [The federal plaintiff] objects to the outcome of a judicial proceeding and filed a separate

11

suit to get around it." <u>GASH Assocs. v. Village of Rosemont</u>, 995 F.2d 726, 727 (7th Cir. 1993). Brown & Root took its best shot on its motion to compel arbitration in the state courts. It lost in that effort and now seeks to avoid the <u>Rooker-Feldman</u> bar by attempting to recast in various ways what occurred in the state trial court. But no matter how many ways Brown & Root tries to renovate its claim, the result is the same: Brown & Root cannot obtain what amounts to appellate review of a state court decision in federal district court. Respect for state judicial processes and deference to congressional judgment require no less. The judgment of the district court is accordingly

<u>AFFIRMED</u>.