**YONKERS ELECTRIC CONTRACTING CORP., Plaintiff,**

v.

**LOCAL UNION NO. 3, INTERNATIONAL BROTHERHOOD ELECTRICAL WORKERS' AFL–CIO and Dennis McSpedon, individually and as President of Local Union No. 3, International Brotherhood Electrical Workers' AFL–CIO Defendants.**

**No. 02 Civ. 3193(CM).**

United States District Court,
S.D. New York.

Sept. 10, 2002.

Thomas P. McDonough, Jackson, Lewis, Schnitzler & Krupman, LLP, White Plains, NY, for Plaintiff.

Marty Gerard Glennon, Meyer, Suozzi, English & Klein, PC, Mineola, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING MOTION TO REMAND TO THE NEW YORK SUPREME COURT

MCMAHON, District Judge.

On December 1, 1998, Yonkers Electric Contracting Corporation, ("Yonkers Electric") and Local Union No. 3 International Brotherhood Electrical Workers' AFL–CIO ("the Union") executed a Project Labor Agreement ("PLA"). A PLA is a contract between an employer and a labor organization under the Labor Management Relations Act, 29 U.S.C. § 185. According to this agreement, Yonkers Electric is the prime contractor at a construction project located at the Westchester County Courthouse, 111 Martin Luther King, Jr. Boulevard, White Plains, New York.

The PLA contains an arbitration clause under which the parties are required to submit disputes arising under the PLA to arbitration. Before submitting a grievance to the AAA for arbitration, the parties must follow this procedure:

Step 1:

a) When any employee covered by this Agreement feels aggrieved by a claimed violation of the Agreement, the employee shall ... give notice of the claimed violation to the work site representative of the involved contractor. To be timely, such notice of the grievance must be given within 14 calendar days after the act, occurrence or event giv[ing] rise to the grievance. The business representative of the Local Union or job steward and the work site representative of the involved contractor shall meet and endeavor to adjust the matter with[in] 14 calendar days after a timely notice has been given. If they fail to resolve the matter within the prescribed period, the grieving party, may, within 14 calendar days thereafter, pursue Step 2 of the grievance procedure by serving the involved contractor and the Construction Project Manager with written copies of the grievance setting forth a description of the claimed violation, the date on which the grievance occurred, and the provisions of the Agreement alleged to have been violated....

b) Should any signatory to this Agreement have a dispute (excepting jurisdictional disputes or alleged violations of Article 7, Section 1) with any other signatory to this Agreement and, after conferring, a settlement is not reached within 14 calendar days, the dispute shall be reduced to writing and proceed to Step 2 in the same manner as outlined in subparagraph (a) for the adjustment of employee grievances.

Step 2:

a) The Business Manager or designee of the involved Local Union, together with representatives of the Council and the involved contractor, and Construction Project Manager shall meet in Step 2 within 14 calendar days of service of the written grievance to arrive at a satisfactory settlement.

Step 3:

a) If the grievance shall have been submitted but not resolved in Step 2, any of the participating Step 2 entities may, within 21 calendar days after the initial Step 2 meeting, submit the grievance in writing (copies to the other participants) to the AAA for the appointment of an Arbitrator who shall act, as the Arbitrator under this procedure....

b) Failure of the grieving party to adhere to the time limits set forth in

this Article shall render the grievance null and void. These time limits may be extended only by written consent of the Construction Project Manager involved contractor and involved Local Union at the particular step where the extension is agreed upon. . . .

(PLA Art. 9, Section 1, at 19–20.)

On September 27, 2001, the Union initiated a grievance against Yonkers. The Union's grievance was that Yonkers Electric had violated the job referral and hiring provisions contained in Article 4 of the PLA. The parties met to discuss the grievance on October 3, 2001, but did not resolve the matter at the meeting, skipping over Step 2. In a letter dated October 31, 2000, the Union made a Demand for Arbitration with the American Arbitration Association, pursuant to the PLA. (Ex. 2 to Glennon Decl.)

In response to this Demand for Arbitration, Yonkers Electric petitioned the New York Supreme Court, County of Westchester on November 21, 2001 for an Order to Stay Arbitration because of the Union's failure to complete all of the procedural steps as stated in the PLA regarding the processing of a grievance.

By Order dated February 4, 2002, in Case No. 18250/01, Judge Lefkowitz granted a stay of arbitration on behalf of Yonkers Electric. (Ex. 4 to Glennon Decl.) The order contains a list of the papers before the court and then states:

Upon the foregoing papers it is ORDERED that the motion [to stay arbitration] is granted and the "cross-motion" [to compel arbitration] (cf. CPLR 2215) denied. It is clear that respondents did not comply with Step 1 of the grievance procedure nor did they timely file for arbitration under the agreement. Pursuant to the agreement failure to adhere to the time limits renders "the grievance null and void". Both the issue of whether respondents complied with Step 1 and timely proceeded thereafter are for the Court to decide, not the arbitrator.

*Yonkers Electric Contracting Corp. v. Local Union No. 3,* Index No. 18520/01, (Feb. 4, 2001) ("Judge Lefkowitz's Order").

Following Judge Lefkowitz's decision, the Union initiated a new grievance, claiming that Yonkers Electric was continuing to violate the PLA. Yonkers Electric argues that it had not hired any new employees after the initial grievance was filed, hence there could be no "continuing violation." . The Union took the position that the contractor's failure to fire the employee it had hired in violation of the contract rendered the violation a "continuing violation."

On February 8, 2002, the Union sent a letter to Richard Ryan, President of Yonkers Electric, requesting that Yonkers Electric participate in a Step 1 grievance in accordance with the PLA. (Ex. 5 to Glennon Decl.)

On February 19, 2002, the parties met to discuss the grievance, as prescribed by Step 1 of Article 4 of the PLA. No amicable resolution was reached at that meeting. The Union thus requested a meeting of all interested parties, as required by Step 2 of Article 4 of the PLA. (Ex. 6 to Glennon Decl.) As a result, the parties met on March 7, 2002, but again, the dispute was not resolved.

The Union admitted during this second-round of the grievance process that the new grievance concerned the same hiring that was the subject of the first-round of the grievance process. Yonkers Electric participated in the second grievance proceedings, but maintained that the process was futile since Judge Lefkowitz had already decided to stay arbitration.

The Union filed a new Demand for Arbitration on March 15, 2002. On March 28, 2002, Yonkers Electric moved by an Order to Show Cause with Temporary Restraining Order to stay the arbitration demanded by the Union on the ground that the prior Decision and Order of Judge Lefkowitz precluded arbitration.

The Union then filed a notice of removal to federal court, claiming that federal law governs the dispute, pursuant to the Labor Management Relations Act, 29 U.S.C. § 185. The next day, the Union asked this Court for an Order to Show Cause and Temporary Restraining Order.[1]

Yonkers Electric opposes the Union's motion to remove on two grounds: that this Court lacks jurisdiction, and that the notice of removal was untimely.

I need not decide whether the notice of removal was timely filed, because I find that, under the *Rooker–Feldman* doctrine, I lack federal subject matter jurisdiction over this dispute.

## DISCUSSION

 The party seeking to remove a case bears the burden of establishing the propriety of the removal. *Caterpillar v. Williams*, 482 U.S. 386, 391–92, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Fisher v. Building Servs.*, No. 96–4317, 1997 WL 590843, at *2 (S.D.N.Y. Sept.22, 1997). Removal jurisdiction must be "strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum." *Frontier Insur. Co. v. MTN Owner Trust*, 111 F.Supp.2d 376, 377 (S.D.N.Y.2000).

The Union argues that the PLA between the parties is a contract between an employer and a labor organization within the meaning of the Labor Management Relations Act, 29 U.S.C. § 185. *See e.g., John*

*Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (holding that federal district courts have jurisdiction under § 301 [of the Labor Management Relations Act] to entertain a suit brought to compel arbitration under an existing labor contract). Therefore, the Union asserts that this Court has jurisdiction over the current motion to compel arbitration of a grievance under the PLA.

 Yonkers Electric relies on the *Rooker–Feldman* doctrine to argue that the Court lacks subject matter jurisdiction over this case. Under that doctrine, a federal district court does not have jurisdiction to review a claim that has been previously decided by a prior state court proceeding. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Phifer v. City of New York*, 289 F.3d 49, 55–56 (2d Cir.2002). The principle arises from the fundamental concepts of federalism and is designed to maintain the independence of state courts. *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000); *Wanderlust Pictures, Inc. v. Empire Entertainment Group*, No. 01 CV 4465, 2001 WL 826095, at *3 (S.D.N.Y. July 19, 2001).

 Federal district courts lack subject matter jurisdiction "over cases that effectively seek review of judgments of state courts." *Phifer*, 289 F.3d at 55. The only means by which a party may seek federal review of a state court judgment is by petitioning the Supreme Court for certiorari. *Id.* Issues that are directly decided or are "inextricably intertwined" with a

---

1. On April 29, 2002, Judge Lefkowitz issued a second Stay of Arbitration.

state court decision are barred from federal review. *See Feldman*, 460 U.S. at 486–87, 103 S.Ct. 1303. The preclusive nature of the *Rooker–Feldman* doctrine extends to lower state court judgments and even interlocutory decisions. *Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir.1996).

■ The Second Circuit has acknowledged that there is little guidance for courts in determining when a federal suit is "inextricably intertwined" with a prior state court judgment. *Phifer*, 289 F.3d at 55–56. Claims are "inextricably intertwined" when entertaining the second action would allow the party to "collaterally attack" the state court decision. The Second Circuit has stated that:

> the Supreme Court's use of "inextricably intertwined" means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion.

*Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir. 1996).

■ However, even if res judicata or collateral estoppel do not preclude the second suit, the *Rooker–Feldman* doctrine still may prevent maintenance of a federal action if "the litigant in federal court seeks relief that would effectively void or reverse a related state court ruling." *Wanderlust*, 2001 WL 826095, at *3. A federal court does not have subject matter jurisdiction over a petition to compel arbitration after a state court has already ruled on the merits of that petition. *See Brown & Root*, 211 F.3d 194; *Wanderlust Pictures*, 2001 WL 826095, at *4–6.

■ In *Wanderlust*, Empire Entertainment had invested in a film that Wanderlust Pictures was shooting and producing. *Id.* at *1. Empire brought suit in New York state court seeking an accounting and appointment of a receiver, alleging that Wanderlust had withheld information about its investment. Wanderlust moved to stay the court action pursuant to an arbitration provision in the parties' agreement. The state court denied the motion to compel arbitration because the agreement had only been signed by Empire's agents, not by Wanderlust's, and there had been no formal demand for arbitration. *Id.* at *2. Wanderlust appealed to the Appellate Division, which denied a stay pending its ruling. The state judge then gave Wanderlust leave to renew its motion to compel arbitration. Instead of renewing its motion in the lower state court, Wanderlust withdrew its appeal and filed an order to show cause in federal court, seeking to compel arbitration and stay the state court proceedings. *Id.*

Judge Martin ruled that the only conclusion he could draw from Wanderlust's actions was that the company filed in federal court "to seek a more favorable ruling on its motions and to circumvent the procedures that the state court has implemented for resolving the issue of arbitration." *Wanderlust*, 2001 WL 826095, at *4. He therefore decided that the *Rooker–Feldman* doctrine precluded federal jurisdiction over the motion to compel arbitration. *Id.* Judge Martin noted:

> where the petitioner delays a federal action and chooses instead to litigate the issue of arbitration in state court, and seeks the aid of a federal court only after receiving an adverse ruling in state court, the petitioner runs the risk that constraints on a district court's jurisdiction, rules of preclusion, or principles of equity will prevent or hamper its suit.

2001 WL 826095, at *3 (internal citations omitted). The Union took this same risk in the case at hand. If the Union had

sought removal of the state court proceeding before Judge Lefkowitz issued her order, it might have avoided this problem. However, if I were to decide this case now, I would be conducting an improper review of the state court's prior rulings.

The Union asserts that the factual circumstances surrounding this motion to compel arbitration are distinct from the ones the state court previously reviewed. It is true that the cases do not raise "identical" issues, because the Union initiated a new grievance procedure. The real question, however, is whether the second grievance is the same as the first. It is. The Union concedes that there have been no new hirings since the ones complained of in the original dispute before the New York Supreme Court. Thus, the second grievance filed by the Union is a rehash of the same alleged contract violation as the first. The Union's "continuing violation" argument—which also was made before Judge Lefkowitz—is thus "inextricably intertwined" with the prior proceeding. Matters might well be different if, subsequent to Judge Lefkowitz's order, Yonkers Electric had hired new employees without following the job referral and hiring provisions. Those facts, however, are not before me.

Furthermore, the Union asks me to decide whether the issue of the Union's compliance with the PLA's requirements for initiating an arbitration is a question for the Court or a procedural question for the arbitrator. This, too, was ruled on by Judge Lefkowitz in her Order: "[b]oth the issue of whether respondents complied with Step 1 and timely proceeded thereafter are for the Court to decide, not the arbitrator." (Judge Lefkowitz's Order.) Once again, whether or not I agree with Judge Lefkowitz is of no moment, for I am in no position to overrule her. *See Brown & Root*, 211 F.3d at 202 (stating that state court errors do not provide a basis to circumvent *Rooker–Feldman* ).

## CONCLUSION

I conclude that I do not have subject matter jurisdiction over this matter under the *Rooker–Feldman* doctrine. If Judge Lefkowitz's decision is to be overturned, the Appellate Division will have to do it. Yonkers Electric's motion to remand this case to the New York Supreme Court is granted. The Clerk is directed to close the file.

This constitutes the decision and order of the Court.