**WEIS BUILDERS, INC., a Minnesota corporation, Plaintiff,**

v.

**KAY S. BROWN LIVING TRUST, a Colorado Trust, and Ryan S. Brown Trust, a Colorado Trust, Defendants.**

No. CIV.A. 02–WY–0965 (AJ).

United States District Court, D. Colorado.

Dec. 20, 2002.

John Kevin Bridston, Holland & Hart, LLP, Denver, CO, Jeffrey R. Ansel, John C. Holper, Winthrop & Weinstine, St. Paul, MN, for plaintiff.

James E. Pansing, Lichtenfels, Pansing & Miller, P.C., Denver, CO, for Kay S. Brown Living Trust, Ryan S. Brown Trust, defendants.

Curtis R. Henry, Lichtenfels, Pansing & Miller, P.C., Denver, CO, for Lichtenfels, Pansing & Miller, P.C., defendant.

## AMENDED ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION TO STAY ARBITRATION

ALAN B. JOHNSON, District Judge, sitting by designation.

Before this Court are (1) the defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, and (2) the plaintiff's motion to stay permanently a pending arbitration proceeding, or alternatively, to stay the arbitration during the pendency of this action. The Court having reviewed the briefs of the parties, the applicable law, all matters of record, and being fully advised, DENIES defendants' motion to dismiss and GRANTS the plaintiff's motion to stay arbitration during the pendency of this action.

### BACKGROUND

In April 1999, Weis Builders, Inc. ("Weis"), Kay S. Brown Living Trust, and Ryan S. Brown Trust (the "Brown Trusts") began negotiations to enter into a construction contract to build Staybridge Suites Hotel in Glendale, Colorado. Numerous changes were proposed and both sides made changes to the contract and attachments that were forwarded back and forth between the parties over several months. Both parties signed the contract, which contained a provision mandating arbitration for "any claim arising out of or related to the Contract." However, the parties now dispute the validity of the construction contract because the defendants substituted a revised Exhibit A to the contract.

Weis claims the parties had an established protocol for negotiating and making changes to the proposed contract. Weis asserts that the parties did not make changes to the contract itself or to the attached Exhibit A; but rather, made changes exclusively by changing the addenda to the contract. Once all of the terms were negotiated, Weis sent the contract including Exhibit A, which it created, to Brown Trusts for signature. While Brown Trusts were in possession of the contract, they substituted a radically different Exhibit A for the original, agreed upon Exhibit A. Weis claims that defendants did not use the protocol for making changes on the addenda, nor did they alert Weis to the substitution. Weis relied on the established protocol and its familiarity with the documents it had submitted to the defendants for signature, when it signed the contract containing the substitution. Weis now seeks to have the contract deemed void alleging that it was fraudulently induced.

Brown Trusts argue that they told Weis that the Trusts' bank required all of the different cost items in the contract to be "fixed price" rather than "allowance" items and then made the alteration to the Exhibit A. Weis had the contract containing revised Exhibit A in its possession for three weeks before signing it. During that time, Brown Trusts contacted Weis regarding the status of the contract. In each instance, Brown Trusts claim that Weis said it was continuing to price the work so as to verify the contract costs (which was an attachment to the final contract and the portion of the contract that Weis alleges was fraudulently modified by Brown Trusts).

More than a month after signing, Weis notified Brown Trusts that it did not know that the Standard Agreement provided for a fixed price on the site work. Weis then refused to work on the project and Brown Trusts entered into a contract with a different contractor.

Litigation arose in Colorado state court regarding the construction project. Two separate state courts have entered orders compelling arbitration between these parties.[1] On March 28, 2002, Brown Trusts filed a Demand for Arbitration with the American Arbitration Association citing delay and increased costs and damages in the amount of $ 1,423,000. On May 17, 2002, the plaintiff filed suit in this court seeking: (1) an order declaring the construction contract void *ab initio;* (2) a permanent injunction against pending arbitration brought by the Brown Trusts against Weis; (3) damages incurred by Weis due to Brown Trusts' alleged fraud; (4) tortious interference with prospective business relationship; and (5) negligent non-disclosure.

## (1) MOTION TO DISMISS ARGUMENTS

The defendants argue that since the plaintiff is subject to an order to compel arbitration in two state court actions, this Court does not have subject matter jurisdiction pursuant to the *Rooker–Feldman* Doctrine. *See Brown & Root, Inc. v. Breckenridge,* 211 F.3d 194 (4th Cir.2000). According to the *Rooker–Feldman* doctrine:

> A United States District Court has no authority to review final judgments of a state court in judicial proceedings.... Jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court.... *Rooker–Feldman* bars not only direct review of issues actually decided by the state court, but also consideration of those claims which are 'inextricably intertwined' with state court decisions.... The 'inextricably intertwined' prong of the doctrine bars a claim that was not actually decided by the state court but where 'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'

*Brown & Root, Inc. v. Breckenridge,* 211 F.3d 194, 198 (4th Cir.2000).

Essentially, "[a] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Id.*

In the Interpleader Action pending in Colorado state district court, Brown Trusts filed a Motion to Stay Proceedings and to Compel Arbitration pursuant to the Arbitration Clause in the Standard Agreement signed by both parties. Brown Trusts argued that the Standard Agreement constituted a valid arbitration agreement between Brown and Weis. Weis then filed its Opposition in which it asserted: (1) the payment of the building permit fee

---

1. The City of Glendale, Colorado filed an Interpleader Action asking the Court to determine to whom it should refund a Building Permit Fee related to the Staybridge Suites Hotel. *City of Glendale v. Kay S. Brown Trust, Ryan S. Trust, and Weis Builders, Inc.,* Case No. 00 CV 3847, Division 3 (the "Interpleader Action"). Weis filed a cross claim against Brown Trusts for amounts alleged to be due relating to the Staybridge contract. On March 29, 2001, State District Court Judge Thomas Levi granted Brown Trusts' Motion to Stay Proceedings and to Compel Arbitration.

Thereafter, in a separate action, a subcontractor brought an action against Weis and Brown Trusts related to the Staybridge Suites Hotel project. *TBL Excavating, Inc. v. Kay S. Brown Living Trust et al.,* Case No. 01 CV 1403 (the "Lien Foreclosure Action"). On August 2, 2002, the Colorado State District Court granted Brown Trusts' Motion to Stay Proceedings Pending Arbitration stating that the court "FINDS that the Cross–Claim of Weis Builders, Inc. is subject to a valid, enforceable agreement to arbitrate." (Order at p. 2.)

was not governed by the agreement; (2) Brown Trusts had not presented evidence of an agreement; and (3) Weis' signature to the Standard Agreement was fraudulently induced by Brown Trusts. The Colorado District Court entered an Order to Stay Proceedings and to Compel Arbitration. In the Lien Foreclosure case, a different case pending in state court between the parties, the Court granted Brown Trusts' Motion to Stay Proceedings and Compel Arbitration and found that: "the Cross–Claim of Weis Builders, Inc. is subject to a valid enforceable agreement to arbitrate." (Order at p. 2.)

The plaintiff counters that the matters pending in state court which are subject to the motions to compel are "separable from and collateral to" matters that are present before this Court. *See Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1169 (10th Cir.1998). In the instant case, Weis requests that this Court declare the contract void *ab initio* due to fraud in the execution of the contract and permanently stay the Arbitration pursuant to 9 U.S.C. § 4 because there is no agreement to arbitrate between Brown Trusts and Weis. Weis claims these are distinct issues from the Interpleader Action and the Lien Foreclosure Action. Therefore, it argues, this Court has subject matter jurisdiction over the claims presented in Weis' complaint because they are different than the narrow issues presented to the state courts.

## DISCUSSION

■ As a jurisdictional matter, a federal district court cannot review matters actually decided by a state court or matters that are "inextricably intertwined" with the state court judgment, because review of state court judgments ordinarily is reserved to the United States Supreme Court. *Kiowa Indian Tribe of Oklahoma*

*v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998); *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126 (2d Cir.1997). However, Supreme Court jurisprudence compels a narrow reading of the "inextricably intertwined" test. *Kiowa Indian Tribe of Oklahoma*, 150 F.3d at 1170. "[I]f the purpose of a federal action is 'separable from and collateral to' a state court judgment, then the claim is not 'inextricably intertwined' merely because the federal action necessitates *some* consideration of the merits of the state court judgment." *Id.* Upon reviewing the claims presented to the state courts and the claims presented to the federal district court, this Court finds that the plaintiff is not seeking appellate review of the state court action because the present action is distinct from the prior actions.

This Court cannot say that Weis is attempting to appeal from any of the state court decisions. *See Doctor's Associates, Inc.*, 107 F.3d at 138 (finding that the *Rooker–Feldman* doctrine did not preclude an action to compel arbitration in federal court in part because the federal action was filed before the state court made any rulings on the merits). Weis filed its Verified Complaint on May 17, 2002. Although Weis had been ordered to arbitrate the Interpleader Action dispute in March 2001, Weis does not seek review of the prior order through this action. Weis is prepared to arbitrate the permit fee dispute with Brown Trusts. (Pl.'s Resp. Opposing Defs.' Mot. to Dismiss at p. 10.) However, Weis filed its Complaint in this Court two and a half months before the state court ordered arbitration in the lien foreclosure action.[2] (Compl., Order at p. 2.) It cannot be said that Weis was attempting to seek review of a claim when it had not yet received an adverse adjudication.

. The two collateral actions and the instant case are not "inextricably inter-

---

**2.** The Court ordered arbitration on August 2, 2002. (Order at p. 2.)

twined" because they are distinct as evidenced by the discrete issues in the Interpleader Action and the Lien Foreclosure action. *See Brown & Root v. Breckenridge,* 211 F.3d 194, 199 (4th Cir.2000) (finding that the *Rooker–Feldman* doctrine applied when the party relied on the same legal grounds for relief in both its federal and state motions). In the Interpleader Action, the City of Glendale had control of the permit fee refund and asked both Weis and the Trusts to whom the refund should be paid. Because Weis and the Trusts each claimed that they were entitled to a refund of the permit fees, the City of Glendale commenced an interpleader action asking the court to accept a deposit of the funds and allowing Weis and the Trusts to litigate to whom the funds should be reimbursed. The narrow issue before the court in the Interpleader Action was whether under the Colorado Uniform Arbitration Act, the dispute over the permit fee refund was arbitrable. Without articulating the basis for its decision, the court ordered the parties to arbitrate the permit fee dispute and stayed the litigation.

The other lawsuit was a mechanic's lien foreclosure action commenced by TBL Excavating, Inc., against the general contractor, Cambria Corporation and the Trusts for nonpayment of amounts owed and seeking declaration that its lien on the Trusts' property was superior to the liens of the other named defendants. Weis was named as a defendant under applicable Colorado law as a lien claimant of record. As a named defendant in the Lien Foreclosure Action, to protect its lien rights, Weis was required to "set forth by cross-complaint [its] claim and lien" against the Trusts. C.R.S. § 38–22–111. Thus, Weis asserted a cross-claim against the Trusts to establish that it had a valid lien for the amounts it had paid for the building permit fee. The issue before the court was whether under applicable Colorado law, Weis had properly established a lien on the Trusts' property.

As a result of the court summarily sending the case to arbitration, Weis did not have an opportunity to litigate any issue before the court including the existence of a valid arbitration agreement. *See Brown & Root,* 211 F.3d at 199 (finding that *Rooker–Feldman* applied to preclude subject matter jurisdiction because the state court heard extensive argument on the issue that the party later presented to the federal district court).[3] Neither state

---

3. Since the state court, in the Interpleader Action, did not articulate its reasoning for ordering arbitration, it is impossible to determine if the Court decided the issue of whether any of the documents constituted a contract between the parties. This Court finds the factors presented by the plaintiff persuasive evidence that the state court did not make such a finding. First, as a result of the Trusts' motion in both cases, neither the Trusts nor Weis had an opportunity to engage in discovery of any kind prior to the respective decisions being handed down. Second, in both cases, the courts issued their orders without a detailed discussion of the basis for, or reasoning behind, their decisions. Third, the decisions in the cases were issue specific: the Interpleader Action was related to the permit fee refund and the Lien Foreclosure action was related to Weis' lien claim. Fourth, the court did not hold a hearing, nor did the court make a finding, as to the existence of a valid, enforceable or binding contract between Weis and the Trusts in light of the Trusts' fraud in the execution. It is this issue, which was not decided by either state court, that Weis raises in the present action. The state courts could not have made a determination regarding the validity of the contract without some discovery and factual development. A claim of fraud involves an intensive factual inquiry which did not occur in either proceeding.

1202

court addressed the issue of whether the putative Staybridge Contract is void *ab initio*. That issue is a separate, distinct, and collateral claim from 1) whether Weis is entitled to a building permit refund, and 2) whether Weis has a valid lien claim. Therefore, this Court is not being asked to sit in appellate review of any state court judgment.

Additionally, neither of the Colorado State District Courts specified whether their decisions rested on an interpretation of the Colorado Arbitration Act or upon the Federal Arbitration Act. A federal claim is separable from a state court judgment when the state court judgment relies on state law and not federal law. *Plyler v. Moore*, 129 F.3d 728, 732 n. 7 (4th Cir. 1997). However, since the parties only presented arguments regarding the Colorado statute, this Court will presume that the Colorado state district court relied on the state grounds.[4] To the extent the state court relied on the Colorado statute, the *Rooker–Feldman* doctrine is not implicated and subject matter jurisdiction is present because this litigation presents a different question. *See Plyler*, 129 F.3d at 732.

The defendants have not demonstrated that the *Rooker–Feldman* doctrine compels dismissal of this action. Weis' claims are separate, distinct, and collateral to any issues previously litigated between the parties. Therefore, this court is not called upon to review the legal determinations made by the state courts, but to decide a federal issue separate from those determinations; namely, whether the contract or arbitration provision may be enforced according to the Federal Arbitration Act.

Accordingly, subject matter jurisdiction exists in this Court.

### (2) *MOTION TO STAY ARBITRATION ARGUMENTS*

The Plaintiff argues that once the Court determines that it has subject matter jurisdiction over this case, the Court should "proceed summarily to the trial thereof." 9 U.S.C. § 4. "The question of arbitrability whether a [contract] creates a duty for the parties to arbitrate a particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998). According to Weis, the Federal Arbitration Act specifically provides that Weis is entitled to a jury trial on the issue of whether the Staybridge Contract contained a fraudulently substituted Exhibit A and ultimately whether the entire contract was executed only because of the Defendants' fraud. *See* 9 U.S.C. § 4.

■ Defendants argue that the motion to stay arbitration should be denied because, as a matter of law, the uncontroverted facts show that Weis cannot prove fraud in the execution. "Fraud in the execution ... occurs if a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know the character or essential terms of the proposed contract."

---

4. Brown Trusts only argued that the construction provision constitutes a valid arbitration agreement between Brown Trusts and Weis under the provisions of C.R.S. § 13–22–203 and that pursuant to C.R.S. § 13–22–204, on application of a party showing the existence of a valid arbitration agreement, the court shall order the parties to proceed with arbitration. (*City of Glendale v. Kay S. Brown Trust, Ryan S. Trust, and Weis Builders, Inc.*, Case No. 00 CV 3847, Division 3, Def. Brown Trusts' Mot. to Stay Proceedings and to Compel Arbitration ¶ 5–6.)

*Colorado Plasterers' Pension Fund v. Plasterers' Unlimited, Inc.,* 655 F.Supp. 1184, 1186 (D.Colo.1987). The defendants claim that Weis had ample opportunity to know the essential terms of the proposed contract, and therefore, cannot prove fraud in the execution.

## DISCUSSION

 Section 4 of the Federal Arbitration Act ("FAA") provides a remedy to a party seeking to compel compliance with an arbitration agreement. Under section 4, a federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration … is not in issue." 9 U.S.C. § 4. According to the Supreme Court, if a party claims there "is fraud in the inducement of the arbitration clause itself an issue which goes to the 'making' of the agreement to arbitrate the federal court may proceed to adjudicate it." *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). However, "the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 404, 87 S.Ct. 1801.[5] Thus, where fraud in the inducement is at issue, a court "must defer to the arbitrator except where the alleged fraud was directed specifically to the arbitration clause itself, rather than generally to the contract of which the arbitration clause is merely a part." *Audio Video Center, Inc. v. First Union Nat'l Bank,* 84 F.Supp.2d 624, 626 (E.D.Pa.2000).

However, the Court in *Prima Paint Corp. v. Flood & Conklin Manu. Co.* did not grapple with the question of what is to be done when a party contends not that the underlying contract is merely voidable, but rather, that no contract ever existed. *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 105 (3d Cir.2000).[6] This distinction is an important one, for though arbitration clauses are severable from their larger contracts, the question whether the underlying contract contains a valid arbitration clause still precedes all others because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* The Third Circuit has concluded that the doctrine of severability presumes a valid underlying agreement. *Id.* at 106.[7] It draws a distinction between contracts that are asserted to be "void" or non-existent, as is contended here, and those that are merely "voidable," as was the contract at issue in *Prima Paint,* for purposes of evaluating

---

5. This holding in *Prima Paint* has come to be known as the "severability doctrine." *See Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 105 (3d Cir.2000).

6. Neither the Supreme Court nor the Tenth Circuit has ruled on whether the "severability doctrine" applies to claims, such as fraud in the execution, that void a contract.

7. *See also Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc.,* 925 F.2d 1136 (9th Cir.1991) ("[W]e read *Prima Paint* as limited to challenges seeking to *avoid* or *rescind* a contract—not to challenges going to the very existence of a contract that a party claims never to have agreed to."); *I.S. Joseph Co. v. Mich. Sugar Co.,* 803 F.2d 396, 400 (8th

Cir.1986) ("[T]he enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other."); *Cancanon v. Smith Barney, Harris, Upham & Co.,* 805 F.2d 998 (11th Cir.1986) (finding that the defense of fraud in the factum is not arbitrable); *Audio Video Center, Inc. v. First Union Nat'l Bank,* 84 F.Supp.2d 624 (E.D.Pa.2000) ("[W]hen a party contends that fraud in the execution of the contract occurred, the court must consider the circumstances surrounding the making of the putative contract as a whole and not simply the arbitration provision."). *But see C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 912 F.2d 1563, 1567 (6th Cir.1990) (rejecting fraud in factum/inducement distinction).

whether the making of an arbitration agreement is in dispute. *Id.* at 107. This distinction is crucial because *Prima Paint* involves fraud in the inducement, a voidable defense, while the instant case involves fraud in the execution, which is a defense that voids a contract.[8]

This Court finds the arguments advocating the inapplicability of the severability doctrine to claims that void a contract to be persuasive. Before a party can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. *Sandvik AB,* 220 F.3d at 106. Arbitration is a matter of contract, and no arbitration may be compelled in the absence of an agreement to arbitrate. *Id.* at 108. A valid agreement to arbitrate cannot arise out of a broader contract if no broader contract ever existed. In determining whether these parties agreed to arbitrate claims in dispute when one of the parties contends that fraud in the execution of the contract occurred, this court will consider the circumstances surrounding the making of the putative contract as a whole and not simply the arbitration provision. Therefore, these parties shall not be ordered to arbitrate pursuant to the Federal Arbitration Act until this Court is satisfied that "the making of the agreement for arbitration ... is not in issue." 9 U.S.C. § 4. Pursuant to the FAA, this Court will stay the arbitration currently before the American Arbitration Association pending the determination that a valid agreement to arbitrate exists between the parties.[9]

It is therefore

**ORDERED** that defendants' motion to dismiss is **DENIED**.

**ORDERED** that plaintiff's motion to stay arbitration during pendency of this action is **GRANTED**. ·

---

8. Under the common law of contracts, there is a distinction between fraud in the inducement and fraud in the execution. *See Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 110 (3d Cir.2000) ("Fraud in the execution results in the agreement being void *ab initio,* whereas fraud in the inducement makes the transaction merely voidable.").

9. This Order does not interfere with either state courts' order. The Arbitration Demand before the AAA is a general demand based on the putative contract between the parties. Brown Trusts claims breach of contract and claims they were damaged in the following manner: a) the cost to construct the hotel in the new contract with Cambria was substantially higher than provided for in the final contract with Weis; b) there were increased insurance costs under the new Cambria Contract; c) there were increased bond costs under the new Cambria Contract; d) the cost of installing FF & E was increased under the new Cambria Contract; e) there was a permanent lender extension fee as a result of the delays caused by Weis' breach; f) the Trusts incurred additional financing costs, appraisal and lender fees and interest; g) the owner incurred delay costs including expenses and loss of earnings; and h) the Trusts were damaged in other ways to be shown at Arbitration. (Memo. accompanying Demand for Arbitration.) The Arbitration Demand does not mention the state court orders and it does not address the issues that are subject to the state courts' orders compelling arbitration.